# UNITED STATES DISTRICT COURT
## District of Kansas
(Wichita Docket)

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

      v.                    CASE NO.   19-CR-10150-JWB

**KEVIN STRUSS,**

      **Defendant.**

# INFORMATION

The United States Attorney charges:

### Introduction

<u>The Department of Agriculture's Federal Crop Insurance Program</u>

1.    The United States Department of Agriculture (USDA) is a department of the United States that was established to support the production of agriculture. Congress passed the Federal Crop Insurance Act (FCIA) "to promote the national welfare by improving the economic stability of agriculture through a sound system of crop insurance." To carry out this purpose, Congress created the Risk Management Agency (RMA), which is an agency of the

1

USDA; and the Federal Crop Insurance Corporation (FCIC), which is a wholly-owned government corporation, to administer the FCIA, all for the purpose of providing government insurance against unavoidable crop losses.

2. Congress authorized FCIC to utilize private insurance companies in providing crop insurance to the nation's farmers. These private insurance companies sell and service Multiple Peril Crop Insurance (hereinafter referred to as Crop Insurance) polices to farmers. Ag Risk Management Technologies (ARMtech), Rural Community Insurance Services (RCIS) and Farmers Mutual Hail Insurance Company (FMH) are three such private insurance companies; each of which insured the crops in this matter during different years.

3. The Crop Insurance program provides insurance coverage to farmers against natural crop losses. The FCIC reimburses private insurance companies for any indemnity payments made to policyholders, i.e. the insured farmers, and, in accordance with the terms and conditions of a reinsurance agreement, between FCIC and the insurance companies, the FCIC subsidizes a portion of the farmer's federal crop insurance premiums, and also reimburses the private insurance companies for their administrative costs.

4. When a claim is made for crop insurance indemnity payments, the farmer must provide the insurance company with a complete harvesting, production,

and marketing record for each insured crop, and must also provide the insurance company with a complete harvesting, production, and marketing record for any acreage the farmer did not insure.

### Factual Background

5. At all times material hereto Kevin Struss has been engaged in farming operations operating under the names of: Kevin Struss; Struss Farms LLC; and Struss and Cook Farms, which are hereinafter referred to collectively as the Struss Farming Operations.

6. During the calendar years of 2014, 2015, 2016, and 2017, the farming operations of Kevin Struss grew corn and sorghum/milo.

7. In 2014, 2015, 2016 and 2017, Kevin Struss electronically applied for Federal Crop insurance for his corn and sorghums crops, and said applications were approved.

8. After Struss' applications for insurance were approved, Kevin Struss submitted MPCI Acreage Reports, as required for each crop and each tract of land for which he purchased federal crop insurance. The MPCI Acreage Reports identified the insurable and un-insurable acreage in which Kevin Struss had a share, the date said crop was planted and the required land identifier, e.g. the legal description of the land.

9. In 2014, 2015, 2016, and 2017, Kevin Struss filed claims for crop insurance indemnity payments.

10. To receive a crop insurance indemnity payment, the insured must provide complete harvesting, production and marketing records for each insured crop, and must also provide any harvest, production or marketing records for any crops produced on acreage which is not insured. Kevin Struss caused a "Proof of Loss" to be submitted for each of the 2014, 2015, 2016, and 2017, crops on which he had purchased federal crop insurance.

11. Each Proof of Loss submitted by Kevin Struss included a "Production Worksheet" in which Kevin Struss certified that the information provided in the Production Worksheet was "true and complete," that he understood that the crop insurance was subsidized by the Federal Crop Insurance Corporation (FCIC), and that any false claims or false statements were subject to criminal penalties.

12. Each of the Production Worksheets submitted, signed, and certified to by Kevin Struss, for the 2014, 2015, 2016 and 2017 crops, falsely under-reported the total amount of corn and/or sorghum/milo which the Kevin Struss farming operations had produced.

13. In 2014 Kevin Struss submitted a Proof of Loss with ARM Tech and certified that the Kevin Struss farming operations produced a total of 13,957 bushels

of corn, when in fact his farming operations had actually produced approximately 40,568 bushels of corn, and concealed the production of approximately 26,611 bushels of corn.

14. Kevin Struss concealed the 26,611bushels of unreported corn identified in paragraph 13 above, by:

    a. failing to disclose 10,467 bushels of corn produced by the Struss farming operations, which Kevin Struss caused to delivered Golden Belt COOP, and which were subsequently transferred by Kevin Struss into the name of Jodi Desair, thereby causing Golden Belt COOP to issue checks for said corn, in the name of Jodi Desair, in the amount of $36,144.33, who then endorsed said checks and transferred the funds to Kevin Struss.

    b. failing to disclose to ARM Tech an additional 13,460 bushels of corn produced by the Struss farming operations and sold by the Struss farming operations to Golden Belt COOP, and 2,684 bushels of corn produced by the Struss farming operations and sold by the Struss farming operations to Cargil, Inc.

15. As a result of the Struss' misrepresentations concerning the Struss farming operation's 2014 corn production, ARM Tech paid the Struss farming

operation $83,234.00 in insurance federal crop insurance benefits to which the Struss farming operations were not entitled.

16. In 2014 Kevin Struss submitted a Proof of Loss to be filed with Arm Tech and certified that the Kevin Struss farming operations produced a total of approximately 72,906 bushels of sorghum/milo, when in fact his farming operations had actually produced approximately 142,904.7 bushels of sorghum/milo, and concealed the production of approximately 69,998.9 bushels of sorghum/milo.

17. Kevin Struss concealed the 69,998.9 bushels of sorghum/milo identified in paragraph 15 above, by:

    a. failing to disclose to ARM Tech 36,934 bushels of sorghum/milo produced by the Struss farming operations and which Kevin Struss caused to be delivered to Golden Belt COOP, and which were subsequently transferred by Kevin Struss into the name of Jodi Desair, thereby causing Golden Belt COOP to issue checks for said sorghum/milo in the name of Jodi Desair in the amount of $120,756.44, who then endorsed said checks and transferred the funds to Kevin Struss.

    b. Failing to disclose to ARM Tech 16,634 bushels of sorghum/milo produced by the Struss farming operations and sold by the Struss

6

farming operations to Golden Belt, COOP and 16,431 bushels of sorghum sold to Cargill, Inc.

18. As a result of Struss' false representations concerning the Struss farming operation's 2014 sorghum production, ARM Tech paid the Struss farming operation's $206,806 in federal crop insurance benefits to which the Struss farming operations were not entitled.

19. In 2015 Kevin Struss submitted a Proof of Loss to ARM Tech and certified that the Kevin Struss farming operations produced a total of 191,280 bushels of corn, when in fact his farming operations had actually produced approximately 214,803 bushels of corn, and concealed the production of approximately 23,524 bushels of corn.

20. Kevin Struss concealed the 23,524 bushels of corn identified in paragraph 19 above, by failing to disclose to ARM Tech 22,549 bushels of corn produced by the Struss farming operations and sold by the Struss farming operations to Golden Belt COOP and 975 bushels of corn produced by the Struss farming operation and sold to Frontier Ag., Inc.

21. As a result of Struss' misrepresentations concerning the Struss farming operation's 2015 corn production, ARM Tech paid the Struss farming operation $96,869.00 in federal crop insurance benefits to which the Struss farming operations were not entitled. In 2015 Kevin Struss submitted a Proof

of Loss to ARM Tech and certified that the Struss farming operations produced a total of 26,626 bushels of sorghum/milo, when in fact the Struss farming operations actually produced approximately 57,835 bushels of sorghum/milo, and concealed the production of approximately 31,208 bushels of sorghum/milo.

22. Kevin Struss concealed the 31,2087 bushels of sorghum identified in paragraph 22 above, by:

   a. Failing to report to ARM Tech 9,583 bushels of sorghum, produced by the Struss farming operations, and which Struss caused to be delivered to Frontier Ag., Inc., but which Kevin Struss failed to report to ARM Tech and which Kevin Struss represented were owned by Kellie Acker, thereby causing Frontier Ag., Inc. to issue a check for said sorghum in the name of Kellie Acker in the amount of $27,826.35, who then endorsed said check and transferred the funds to Kevin Struss, and

   b. Failing to disclose 21,626 bushels of sorghum produced by the Struss farming operations and sold by the Struss farming operations and which Kevin Struss caused to be delivered to Golden Belt, COOP.

23. As a result of the Struss' false representation of the Struss farming operations 2015 sorghum, ARM Tech paid the Struss farming operations $104,133.00 in

8

federal crop insurance benefits to which the Struss farming operations were not entitled.

24. In 2016 Kevin Struss filed a Proof of Loss with RCIS and certified that the Struss farming operations produced a total of 628,508 bushels of corn, when in fact the Struss farming operations had actually produced approximately 744,967 bushels of corn, and thereby concealed the production of approximately 116,194 bushels of corn.

25. Kevin Struss concealed the 116,194 bushels of corn identified in paragraph 23 above, by:

   a. failing to disclose to RCIS 21,903 bushels of corn produced by the Struss farming operations and sold by the Struss farming operations to Cargill, Inc., and represented that said corn was owned by Kellie Acker, thereby causing Cargill, Inc., to issue checks for said corn in the name of Kellie Acker, in the amount of $62,577.60, who then endorsed said checks and transferred the funds to Kevin Struss;

   b. failing to disclose to RCIS 4,323 bushels of corn produced by the Struss farming operations and sold by Struss farming operations to Frontier Ag., Inc., in the name of Kellie Acker, thereby causing Frontier Ag., Inc., to issues checks in the amount of $11,474.85 to

>   Kellie Acker, who then endorsed said checks and transferred the funds to Kevin Struss;
>
>   c. failing to disclose to RCIS 6,118 bushels of corn produced by the Struss farming operations and sold by Struss farming operations to Cargill, Inc.;
>
>   d. failing to disclose to RCIS 34,772 bushels of corn produced by the Struss farming operations and sold by Struss farming operations to Lane County Feeders.

26. As a result of the Struss' false representations to RCIS concerning the Struss farming operation 2016 corn production, the Struss farming operations sought payment of $1,550,048 in federal crop insurance indemnification payments to which they were not entitled, however, RCIS refused to accept the Proofs of Loss and submitted by Kevin Struss farming operations, and declined payment.

27. In 2017 Kevin Struss filed a Proof of Loss with FMH and certified that the Struss farming operations had produced a total of 23,633 bushels of sorghum, when in fact the Struss farming operations actually produced approximately 59,163 bushels of sorghum, and concealed the production of approximately 35,530 bushels of sorghum.

28. Kevin Struss concealed the 35,3502 bushels of sorghum identified in paragraph 27 above, by:

    a. Failing to report to FMH 31,682 bushels of sorghum produced by the Struss farming operations and which Kevin Struss caused to be delivered to Frontier Ag., Inc, and which Kevin Struss represented were owned by Kellie Acker, thereby causing Frontier Ag., Inc. to issue a check for said sorghum in the name of Kellie Acker in the amount of $95,773.57 who then endorsed said check and transferred the funds to Kevin Struss, and

    b. Failing to disclose to FMH 3,849 bushels of sorghum produced by the Struss farming operations and sold by the Struss farming operations to Frontier, Ag.

29. As a result of Struss' false representation to FMH concerning the Struss farming operation 2017 sorghum production, FMH paid 108,363.00 in federal crop insurance benefits to the Struss farming operations, to which said operations were not entitled.

30. As a result of Kevin Struss' false representations to ARM Tech, RCIS and FMH, the Struss farming operations received approximately $599,405.00 of federal crop insurance premium benefits for crop production Struss concealed from the crop insurance carriers; approximately $1,231,023.00 of federal crop

insurance premium subsidies to which Kevin Struss and the Struss farming operations were not entitled; and caused FCIC to pay approximately $270,495.00 of administrative costs to ARM Tech, RCIS, and FMH, which said crop insurance companies would not have received without the defendants' scheme to defraud the Federal Crop Insurance program.

## COUNT ONE
## FEDERAL CROP INSURANCE FRAUD
### 2015 Crop Year

31. Beginning on approximately December 1, 2015 and continuing through approximately, February 8, 2016, in the District of Kansas, the defendant,

### KEVIN STRUSS

knowingly made a false statement or report for the purpose of influencing in any way the action of ARMtech, a company reinsured by the Federal Crop Insurance Corporation, to wit; the defendant as part of his Proof of Loss to ARMtech for his 2015 crop year, submitted certified Production Worksheets, which falsely under-reported his total 2015 corn crop by approximately 23,524 bushels and sorghum/milo crop by approximately 31,208 bushels, in order to receive approximately $201,002 of federal crop insurance benefits, to which he was not entitled; federal crop insurance premium subsidies in the approximately amount of $510,694.00 to which he was not entitled; and caused the FCIC to pay administrative

costs to ARMtech which the FCIC would not have paid but for the defendant's scheme to defraud the federal crop insurance program.

The above acts were in violation of Title 18, United States Code, §§ 1014 and 2.

## COUNT TWO
## BANKRUPTCY FRAUD

32. On April 26, 2018, Kevin W. Struss filed a Voluntary Petition For Individuals Filing for Bankruptcy, pursuant to Chapter 11.

33. In the Statement of Financial Affairs for Individuals Filing for Bankruptcy, the defendant was asked the following question: "Within 2 years before you filed for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs? The defendant responded "no" to this question.

The defendant failed to identify the following wire transfers of money to a bank account belonging to K.A.:

   2-5-18  $320,000.00

   1-23-18  $150,000.00

34. On or about April 28, 2018, in the District of Kansas, the defendant,

### KEVIN W. STRUSS

knowingly and fraudulently made a false declaration and statement under penalty of perjury in relation to a case under title 11, of the United States Code, to wit; on that

date the defendant filed for bankruptcy and in the *Statement of Financial Affairs for Individuals Filing for Bankruptcy* the defendant was asked: "Within 2 years before you filed for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?"  The defendant's answer to this question was "no," but in truth and fact the defendant knew that on January 23, 2018, he had transferred $350,000.00 to KELLY ACKER and that on February 5, 2018, he had transferred $120,000.00 to KELLY ACKER.

The above acts were in violation of Title 18, Unites States Code, §152(3).

STEPHEN R. MCALLISTER
United States Attorney

s/ Alan G. Metzger
ALAN G. METZGER, #10143
Assistant United States Attorney
301 N. Main, Suite 1200
Wichita, KS  67202
Tele:   316-269-6481
Fax:    316-269-6484
E-mail: alan.metzger@usdoj.gov

(It is requested that the trial be held in Wichita, Kansas)